<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **R.A.,** *on behalf of* **H.A.**, | |
| Plaintiff, | Civil Action No. 22-981 (ZNQ) (TJB) |
| v. | **OPINION** |
| **MIDDLETOWN TOWNSHIP PUBLIC SCHOOLS,** *et al.*, | |
| Defendants. | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by

Defendant Middletown Township Board of Education ("Defendant" or "District").  ("Motion",

ECF No. 43.)  In support of the Motion, Defendant filed a brief ("Moving Br.", ECF No. 43) and

a Statement of Facts ("SOF", ECF No. 43-1) in accordance with Local Rule 56.1.  Plaintiff R.A.

("Plaintiff") does not oppose the Motion.[1]

---

[1] Plaintiff failed to file an opposition to the Motion by the due date of January 2, 2024.  On January 16, 2024, Plaintiff filed a letter requesting an automatic extension under Local Civil Rule 7.1(d)(5).  (ECF No. 46.)  Though the Court denied Plaintiff's request under the Rule because it was "not filed before the date on which opposition papers would otherwise be due under L. Civ. R. 7.1(d)(5)," the Court nevertheless exercised its discretion in granting Plaintiff an extension to file an opposition by February 6, 2024.  (ECF No. 47.)  Despite affording Plaintiff an opportunity to respond to the Motion, Plaintiff never filed an opposition.  Given Plaintiff's failure to respond to the Motion or the SOF after the Court gave Plaintiff an opportunity to do so, the Court will grant the District's Motion if the Motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to summary judgment.  *See* Fed. R. Civ. P. 56(e)(3); *see also Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

### A. FACTUAL BACKGROUND

H.A. is the marital child of Plaintiff and B.A., who are divorced. (SOF ¶ 11.) Both parents have custody over H.A., though B.A. is the parent of primary residence and Plaintiff is the parent of alternative residence. (*Id.*) H.A. has been diagnosed with Attention Deficit Disorder and autism. (*Id.* ¶ 10.) As a result of his diagnosis, H.A. was classified as "Other Health Impaired" and began receiving special education and related services. (A.R. at 3.)

In the Spring of 2021, B.A. consented to a formal reevaluation of H.A. by a District Child Study Team ("CST"). (SOF ¶ 12.) Between May 2021 and June 2021, the CST conducted various evaluations of H.A. including an education evaluation, an occupational therapy reevaluation, a speech language evaluation, and a psychological evaluation. (*Id.*) Upon Plaintiff's request, on July 28, 2021, the CST conducted eligibility meetings and after reviewing the evaluation reports, the CST recommended declassifying H.A. (*Id.* ¶ 13.) In other words, the CST determined that H.A. was no longer in need of special education and related services under the Individuals with Disabilities Education Act ("IDEA"). (*Id.* ¶ 9.) Notably, B.A. voluntarily consented to H.A.'s declassification. (*Id.*)

---

[2] The Motion is based on the Administrative Record ("A.R.", ECF No. 44) and the District's SOF given the parties did not engage in additional discovery. The Court also notes that all page references to the Administrative Record refer to the page numbers generated by the Court's e-filing system appearing on the upper-righthand corner of the documents.

## B.     PROCEDURAL HISTORY

### 1.     Administrative Proceedings

#### a)     *The Parties File Due Process Petitions*

The relevant procedural history begins in August 2021 when Plaintiff filed a due process petition ("Plaintiff's Petition"). (*Id.* ¶ 1.) After the District responded to Plaintiff's Petition, on September 20, 2021, the Petition was transferred to the Office of Administrative Law ("OAL") and assigned to the Honorable Carl V. Buck, III, A.L.J. ("ALJ Buck"). (A.R. at 3.) B.A. intervened thereafter. (*Id.*) ALJ Buck considered Plaintiff's Petition as "a motion for emergent relief, requesting an order for stay put (reclassify H.A.) and ordering an IEE [Independent Education Evaluation]." (*Id.*) The District also filed a due process petition ("District's Petition") seeking an order denying Plaintiff's request for an IEE. (*Id.*)

#### b)     *Due Process Hearing ("Hearing") Begins in January 2022*

The Hearing began, but did not conclude, on January 3, 2022. (*Id.* at 4.) During the Hearing, Marian Enny ("Enny") testified on behalf of the District. (SOF ¶ 16.) Enny is a Learning Disability Teacher Consultant, a member of the CST, and H.A.'s case manager. (SOF ¶¶ 16, 22.) ALJ Buck qualified Enny as an "expert in special education and in learning disabilities teacher consulting." (*Id.*). Enny testified that when H.A. came to the District in Summer 2020, he received special education services pursuant to H.A.'s then-current individualized educational program ("Transfer IEP"). (*Id.* ¶ 18; A.R. at 10.) The Transfer IEP "only provided for language arts in-class special education support, and related services for speech and occupational therapy (OT)." (A.R. at 10.) In May 2010, Enny explained that the District issued a new IEP for H.A. and conducted complete reevaluations of H.A. ("May 2021 IEP"). (SOF ¶ 19.) Plaintiff was not at the May 2021 IEP meeting despite efforts to accommodate her schedule. (*Id.* ¶ 20.) Enny then testified about the various tests performed during H.A.'s evaluation. (*Id.* ¶ 23; A.R. at 11.)

Specifically, Enny explained that H.A. scored in the "high average range overall" with respect to the educational test and "average to above average" for the speech-language, OT, and psychology tests. (A.R. at 12.) Enny also explained that the standard scores did not indicate any outstanding areas of disabilities not already investigated through the evaluations. (*Id.*)

Based on the evaluation results, various reports from H.A.'s teachers, H.A.'s report card, and standardized test scores, it was Enny's professional opinion that H.A. did not need special education services and that "his disabilities are not impeding his ability to access his education and learn." (*Id.* at 14.) Though Plaintiff did not agree with the decision to declassify H.A., B.A. did agree with the decision and signed a consent form declassifying H.A. (SOF ¶ 26.) Enny testified that it was her understanding that the custody order between Plaintiff and B.A. over H.A. "meant both had educational decision-making authority regarding H.A., and that only one parent needed to consent to educational decisions for the school to have the required parental consent and to implement the plan." (A.R. at 11.)

c)      *The Hearing Pauses*

The administrative proceedings became complicated after the Hearing. On January 12, 2022, Plaintiff filed a motion for emergent relief seeking to reclassify H.A. under the IDEA's Stay-Put provision. (*Id.* 4, 8.) On February 3, 2022, ALJ Buck denied Plaintiff's emergent relief motion. (*Id.* at 4.) Specifically, ALJ Buck denied Plaintiff's request for stay-put protection to reclassify H.A. and also denied Plaintiff's request to order an IEE. (*Id.*) That same day, Plaintiff filed a motion for summary judgment on the District's Petition seeking an order denying Plaintiff's IEE request. (*Id.*) On February 16, 2022, the District filed a cross-motion for summary judgment on its own Petition. (*Id.*) However, after Plaintiff initiated the present action in this Court naming ALJ Buck as a defendant, ALJ Buck recused himself from the administrative proceedings and the matter was assigned to the Honorable Dean J. Buono, A.L.J. ("ALJ Buono"). (*Id.*) Plaintiff

4

proceeded to file additional motions and requests before ALJ Buono.  (*Id.* at 4, 8.)  After deciding

several motions and requests Plaintiff filed, ALJ Buono ultimately denied Plaintiff's motion for

summary judgment and granted the District's motion for summary judgment on the District's

Petition.  (*Id.* at 5, 9.)

> d)       *The Hearing Commences in May 2022*

After ALJ Buono decided the various motions, he noted that a pending issue remained as

to the appropriateness of H.A.'s declassification.  (*Id.* at 9.)  As such, ALJ Buono resumed the

Hearing, and it continued on May 26, 2022, June 9, 2022, and June 29, 2022.  (*Id.* at 5.)  Various

witnesses testified during the Hearing, including B.A., Eric Harrison, Esq., attorney of record for

the District, Lauren Cordero ("Cordero"), H.A.'s seventh-grade language arts teacher, and Dr.

Naema Qureshi[3] ("Dr. Qureshi"), an adolescent psychiatrist retained by Plaintiff to perform an

evaluation of H.A.  (SOF ¶¶ 40–74.)  Dr. Qureshi performed two evaluations of H.A. and

diagnosed him with autism spectrum disorder, attention deficit hyperactivity disorder, and

depressive mood symptoms.  (*Id.* ¶ 52.)  Dr. Qureshi "recommended neuropsychiatric testing and

a therapeutic classroom for H.A."  (*Id.*)  In the present motion, however, the District raises many

concerns with the testimony of Dr. Qureshi, including the following:

- Dr. Qureshi never observed H.A. in the classroom nor did she review or receive any recordings or prior IEP meetings (*id.* ¶¶ 53, 70);
- Dr. Qureshi admitted that she formed her opinions based on information primarily provided to her verbally by Plaintiff (*id.* ¶ 54);
- Dr. Qureshi could not recall "whether she previously had arrived at a professional conclusion about what a student needs based on information provided to her solely by a non-primary custodial parent and a legal advocate hired for litigation purposes" (*id.* ¶ 55);
- Dr. Qureshi did not discuss the contents of the May 2021 IEP in her report although she had a professional responsibility to do so (*id.* ¶¶ 55–56);
- Dr. Qureshi admitted that her report contained inaccurate information related to H.A.'s living arrangements (*id.* ¶¶ 57–58);

---

[3] For the avoidance of doubt, there is no relation between Dr. Qureshi and the undersigned.

- Dr. Qureshi agreed that her evaluation report only cites to reports obtained by Plaintiff and it did not discuss or mention any evaluation performed by the District (*id.* ¶¶ 63–64); and
- Dr. Qureshi "agreed that the decision as to whether any curriculum modifications were necessary for H.A. is beyond the scope of her expertise" and that she "would need more information to determine what H.A. needs, despite her recommendation that H.A. be placed in a 'therapeutic classroom'" (*id.* ¶¶ 72–73).

e)       *ALJ Buono Issues a Final Decision on H.A.'s Declassification*

The Hearing concluded in June 2022 and the record closed on September 6, 2022.  (A.R. at 5.)  On September 28, 2022, ALJ Buono issued a Final Decision ("Final Decision") concluding that the District's declassification of H.A. was appropriate and did not deny him a Free Appropriate Public Education ("FAPE") under the IDEA.  (*Id.* at 25.)  In reaching this decision, ALJ Buono first made factual findings regarding the witnesses' credibility.  (*Id.* at 18–20.)  ALJ Buono found that the "District employees [did not] want to deprive H.A. of a program that augments his educational opportunities while working within the parameters of the law and regulation."  (*Id.* at 19.)  Therefore, ALJ Buono found the testimony of all the District's witnesses was credible and accepted the information provided by the District.  (*Id.* at 20.)  However, ALJ Buono had significant concerns with Dr. Qureshi's testimony,[4] underscoring that Dr. Qureshi "only spoke with and accepted the opinion of [Plaintiff] and her advocate in formulating her opinion" and that "much of the information that she relied on was untrue and falsified."  (*Id.* at 19.)  ALJ Buono was circumspect with respect to Dr. Qureshi's testimony and questioned her "experience and knowledge of the law regarding declassification."  (*Id.* at 20.)

---

[4] ALJ Buono had doubts about permitting Dr. Qureshi to testify.  He explained that Plaintiff's "attempt to hide the identify and documents from the District of [Dr. Qureshi] was disturbing and not appropriate" but that he permitted Dr. Qureshi to testify "in an attempt at [providing] any information that would not favor declassification as appropriate."  (A.R. at 19.)  ALJ Buono noted that Plaintiff failed to present any such information and that "[n]o witnesses presented by [Plaintiff] assisted in that determination. In fact, they bolstered the declassification determination."  (*Id.*)

6

Then, ALJ Buono addressed two questions: (1) whether the May 2021 IEP was appropriate for H.A. and offered a FAPE in the least restrictive environment and (2) whether the District appropriately declassified H.A. (*Id.* at 21.) First, "based on the persuasive testimony presented by the District, and the lack of evidence from [Plaintiff]," ALJ Buono concluded that the education H.A. received from the District was "reasonably calculated to offer him FAPE in the least restricted environment." (*Id.* at 22.) Next, regarding H.A.'s declassification, ALJ Buono explained that although H.A. has a qualifying disability, "H.A. did not experience an adverse educational impact on account of a disability and he did not require special education services." (*Id.* at 23.) In reaching this conclusion, ALJ Buono pointed to the District's "concrete evidence, reports, and teacher input" that all supported that H.A. does not require special education services, including that the "entire IEP team reported that H.A. made tremendous progress and thus no longer needed services" and that the team had an "in-depth discussion about declassifying H.A. based on all the information available to them." (*Id.* at 24.) ALJ Buono emphasized that Plaintiff "offered no credible evidence to contradict" the District's evidence and that Dr. Qureshi's opinions were "conclusory and formulated without a complete understanding of H.A. and his history." (*Id.*) Therefore, having found that H.A.'s declassification was appropriate, ALJ Buono dismissed Plaintiff's Petition. (*Id.* at 25–26.)

### 2.      Proceedings in this Court

Plaintiff initiated the instant action on February 24, 2022, by filing the original Complaint against the District and former Defendants ALJ Buck and fourteen individual defendants ("Individual Defendants"). ("Compl.", ECF No. 1.) On July 5, 2022 the Court *sua sponte* dismissed claims against former-Defendant ALJ Buck on the basis of absolute judicial immunity. (ECF No. 17.) On October 28, 2022, Plaintiff filed an Amended Complaint—which remains the operative pleading in this matter—that generally alleges damages arising from the District and the

Individual Defendants' violation of the IDEA.[5]  (*See generally* "Am. Compl.", ECF No. 22.)  On

November 4, 2022, the District and the Individual Defendants moved to partially dismiss the

Amended Complaint.  (ECF No. 23.)  On June 8, 2023, the Court issued an Opinion granting the

partial motion to dismiss.  (ECF No. 30.)  In particular, the Court (1) dismissed the Amended

Complaint's IDEA claims against all the Individual Defendants and (2) dismissed the § 504 and

§ 1983 claims in their entirety.  (ECF No. 31.)  The Court granted Plaintiff leave to file a Second

Amended Complaint but Plaintiff did not do so.  (*Id.*)  Accordingly, the District construes the

Amended Complaint as asserting a sole IDEA claim seeking a reversal of ALJ Buono's Final

Decision.[6]  Accordingly, in the instant Motion, Defendant seeks summary judgment and asks the

Court to uphold ALJ Buono's Decision.

## II.      LEGAL STANDARD

### A.      REVIEW OF STATE ADMINISTRATIVE DECISION UNDER THE IDEA

"The standard of review under which the Court considers an appeal of a state administrative

decision under the IDEA 'differs from that governing the typical review of summary judgment.'"

*F.V. v. Cherry Hill Twp. Bd. of Educ.*, Civ. No. 21-18096, 2023 WL 2662697, at *6 (D.N.J. Mar.

28, 2023) (quoting *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359

---

[5] Though the Amended Complaint is "not a model of clarity," the Court construed the Amended Complaint, which incorporated the original Complaint by reference, as pleading violations of IDEA, § 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983.  (ECF No. 30 at 5.)

[6] The Court does not agree with the District's interpretation that the sole remaining claim in the Amended Complaint is an IDEA appeal seeking a reversal of the Final Decision.  A review of the Amended Complaint reveals that Plaintiff sought additional relief, including: (1) a reversal of the OAL's order lifting Stay Put protection under the IDEA; (2) compensatory education relief; (3) compensatory economic damages and a variety of fees associated with the administrative proceedings; and (4) non-economic damages for emotional distress.  (Am. Compl. at 14–16.)  However, to the extent Plaintiff sought interim and compensatory relief, such relief is not appropriate.  First, the IDEA's Stay-Put provision "protects the status quo of a child's educational placement" during the pendency of an administrative proceeding. Here, however, ALJ Buono's Final Decision marks the conclusion of Plaintiff's Petition and any interim relief Plaintiff seeks is now moot.  Next, though a "plaintiff who alleges the denial of a FAPE may seek compensatory relief in the form of appropriate educational services within the district", *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010), compensatory relief is not warranted here given the Court finds that the District did not deny H.A. a FAPE and that H.A. has not been deprived of an appropriate education.  *See Mary T. Sch. Dist. Of Phila.*, 575 F.3d 235, 249–51 (3d Cir. 2009).

(D.N.J. 2002) (internal citations and quotations omitted)).   When reviewing a challenge to an administrative decision in an IDEA case, the district court generally applies a modified version of *de novo* review, and the court is required to give due weight to the factual findings of the ALJ.  *See Q.T. on behalf of H.P.-B. v. Pottsgrove Sch. Dist.*, 70 F.4th 663, 666 (3d Cir. 2023) (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009)).  "'Factual findings from the administrative proceedings are to be considered *prima facie* correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'"  *Id.*  "[W]hen, as here, an ALJ has heard live testimony and determined that one witness is more credible than another witness, her determination is due special weight."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citing *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)).  "Specifically, this means that a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'"  *Shore Reg'l*, 381 F.3d at 199 (quoting *Carlisle Area Sch. v. Scott P. by and through Bess P.*, 62 F.3d 520, 529 (3d Cir. 1995) (emphasis in original)).  District courts exercise plenary review as to questions of law.  *D.S.*, 602 F.3d at 564.

### B.      UNOPPOSED SUMMARY JUDGMENT MOTION

Local Civil Rule 56.1 requires a motion seeking summary judgment to include a statement of material facts not in dispute and requires the non-moving party to file a responsive statement of material facts.  L. Civ. R. 56.1(a).  Where, as here, a party fails to file a responsive statement of material facts, L. Civ. R. 56.1(a) deems a movant's statement of material facts undisputed for the purposes of the summary judgment motion.  Although a motion for summary judgment may not be granted by default merely because it goes unopposed, *Anchorage Assocs.*, 922 F.2d at 175, the motion may be granted if the undisputed facts warrant judgment as a matter of law.  *Miller v.*

*Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003); *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd*, 559 F. App'x 139 (3d Cir. 2014).

### III.   <u>DISCUSSION</u>

The issue before ALJ Buono was whether the May 2021 IEP implemented by the District offered H.A. a FAPE and whether the District appropriately declassified H.A.   Though the District's Motion does not specifically address each issue separately, the District's firm position is that ALJ Buono correctly concluded that H.A. was not eligible for special education and related services and that he was properly declassified.  (Moving Br. at 8–10.)  Like ALJ Buono, the District does not dispute that H.A. has a qualifying disability.  (*Id.* at 8.)  However, the District highlighted Enny's testimony and the findings of the CST members that explained how "H.A.'s evaluation results and actual classroom performance demonstrated that he is not eligible for special education and related services."  (*Id.* at 10.)  Further, the District urges the Court to find unpersuasive the testimony of Dr. Qureshi, as did ALJ Buono.  (*Id.* at 9.)

The IDEA requires U.S. states that receive federal education funding to ensure that disabled children receive a FAPE.  *See* 20 U.S.C. § 1412(a)(1).  School districts must "identify and evaluate all children who they have reason to believe are disabled under the statute," and "offer an IEP that is 'reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'"  *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (citation omitted).   To be eligible and classified for special education and related services, a student must satisfy the following elements: (1) the student has one or more disabilities as set forth in N.J. Admin. Code § 6A:14-3.5(c)1–14, (2) the "disability adversely affects the student's educational performance," and (3) the "student is in need of special education and related services."  N.J. Admin. Code § 6A:14-3.5(c).  "Classification shall be based on all assessments

10

conducted, including assessment by child study team members, and assessment by other specialists" as set forth in the regulation.  *Id.*

In New Jersey, a student with a qualifying disability is entitled to an IEP, which establishes the rationale for a student's educational placement and serves as the basis for program implementation.  N.J. Admin. Code § 6A:14-1.3.  If a party challenges a student's IEP by filing a due process petition, at the due process hearing, it is the school district's burden to prove by a preponderance of the credible evidence that the proposed IEP was proper, and the child was provided a FAPE.  N.J. Stat. Ann. § 18A:46-1.1; N.J. Admin. Code § 1:6A-14.1(d); *see Lascari v. Bd. of Educ. of Ramapo Indian Hills Reg'l Sch. Dist.*, 116 N.J. 30, 44–45 (N.J. 1989); *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 391 (3d Cir. 2006).  Though a school district has flexibility when implementing an IEP, the school district must nevertheless "confer some educational benefit upon the handicapped child," as required by the IDEA.  *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188–89 (1982)).

Here, because the evidence in the record supports the findings in the Final Decision, the Court declines to disturb ALJ Buono's conclusion that the District appropriately implemented the May 2021 IEP, that it provided H.A. with a FAPE, and that it properly declassified H.A.

As a preliminary point, the District does not dispute that H.A. has a qualifying disability. (Moving Br. at 8.)  Even ALJ Buono noted that H.A. "has one of the enumerated disabilities; he has received diagnoses of autism and [ADHD] and therefore would fit the definition of 'Other Health Impaired' and/or 'Autistic'" under N.J. Admin. Code § 6A:14-3.5(c)2, 9.  (A.R. at 23.) However, as demonstrated through the Hearing, H.A. was eventually declassified because "he did not experience an adverse educational impact on account of a disability."  (*Id.*)

11

Notwithstanding H.A.'s qualifying disability, the evidence and testimony provided during the Hearing established that H.A.'s disability does not unfavorably affect his education performance and he no longer requires special education services.

First, H.A.'s declassification came after H.A. underwent a complete reevaluation consisting of multiple types of tests. As explained by the District's witness, Enny, whom ALJ Buono found credible, H.A.'s revaluation indicated that he was achieving up to his ability and that H.A. had made significant progress such that special education services were no longer needed. H.A. scored average, high average, and even superior in his educational evaluation when compared to other students at his age level. (A.R. at 12.) Further, the educational test, along with H.A.'s performance on the speech-language, OT, and psychology evaluations, all suggested that H.A. does not need services to access his education or to succeed academically. (*Id.* at 13.) Overall, based on his performance across all the tests, the CST members agreed that H.A.'s disabilities "did not adversely affect his educational performance." (A.R. at 22.)

Next, H.A.'s performance in the classroom bolsters the results of his complete reevaluation. For example, reports by H.A.'s teachers support the District's determination that H.A. does not need special education services in the classroom. Cordero, one of H.A.'s teachers and another District witness whom ALJ found credible, described H.A. as "an independent student" and "active participant" in her class who completes his assignments on time. (*Id.* ¶¶ 40–41, 43.) Cordero also testified that H.A. stays on task and is a determined and conscientious student. (*Id.* ¶¶ 41, 43.) Based on her firsthand experience of having H.A. in the classroom, Cordero concluded that H.A. is not a student that requires special education services in the classroom. (*Id.* ¶ 42.) Other teachers reported that H.A. "was not given modified work" and that

his IEP did not even require that "modified work was needed in order for H.A. to access what the rest of his class was working on." (A.R. at 13.)

H.A.'s grades are also indicative of his positive performance in the classroom. Cordero clarified that "none of his grades are adjusted upwards on account of any disability or instruction she received to give him higher grades than he has otherwise earned." (SOF ¶ 43.) Notably, H.A. participated in gifted and talented programs for part of the 2020-2021 school year, he enrolled in honors math and language arts, and was on the high honor roll. (A.R. at 13–14.) In sum, based on the varied evidence presented during the Hearing, the record supports a finding that H.A.'s disability is not impeding his ability to access his education and that special services are not required.

Finally, Plaintiff has attempted to introduce evidence from Dr. Qureshi into the record to contradict H.A.'s declassification. However, the weight and credibility of such evidence is significantly undercut given that ALJ Buono found Dr. Qureshi's testimony to be "not grounded in complete facts nor sound principles of fact gathered through science." (*Id.* at 22.) Here, the Court agrees with ALJ Buono that Dr. Qureshi disproportionality gathered information about H.A. and his educational needs given she exclusively spoke with Plaintiff—and never spoke with B.A.—regarding H.A. *Id.*; *see, e.g.*, *E.P. v. North Arlington Bd. of Educ.*, Civ. No. 17–08195, 2019 WL 1495692, at *10 (D.N.J. Apr. 1. 2019) (agreeing with the ALJ's determination that a witness testimony was not credible when it "relied too much on parent reporting rather than objective criteria"). Further, Dr. Qureshi never observed H.A. in the classroom and based her determination about H.A.'s needs from two evaluations of H.A. she conducted virtually and information she learned from Plaintiff. As such, the Court will not disturb ALJ Buono's characterization of Dr. Qureshi's testimony as "not credible and suspect." (A.R. at 22.)

13

Whether an IEP is appropriate is a question of fact.  *D.S.*, 602 F.3d at 564.  Similarly, whether the District met its FAPE obligation is also a question of fact.  *P.P.*, 585 F.3d at 735.  As such, the Court gives due weight and deference to ALJ Buono's findings of fact and credibility determinations.  Based on the evidence provided by the District, including H.A.'s complete reevaluation, teacher reports, grades, and test scores, the Court concludes that the District has shown by a preponderance of the evidence that it appropriately implemented H.A.'s May 2021 IEP and that it provided H.A. with a FAPE.  Further, given the Court agrees that H.A. no longer requires special education services, the Court also concludes that the District's declassification of H.A. was appropriate and did not violate the IDEA.  Therefore, the Court grants summary judgment in favor of Defendant.

## IV.   CONCLUSION

For the reasons stated above, the Court will GRANT Defendant's Motion (ECF No. 43) and AFFIRM ALJ Buono's Final Decision.  Judgment will be entered in favor of Defendant and against Plaintiff.  An appropriate Order will follow.


Date: **July 22, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

14